**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA

                        Plaintiffs,            Case No. 02-80948
                                               District Judge Arthur J. Tarnow
                                               Magistrate Judge R. Steven Whalen

v.

ALBERT STEVEN BATES and WALTER
JOHN BATES,

                        Defendants.
_____ /


**OPINION AND ORDER DENYING MOTION FOR**
**RULE 16 SANCTIONS**

        Before the Court is  Defendants Albert Steven Bates' and Walter John Bates' *Motion*

*for  Brady Disclosure and for Sanctions Pursuant to Federal Rule of Criminal Procedure*

*16(a)(2)(D)* [Docket #127], which  has been referred for hearing and determination pursuant

to 28 U.S.C. §636(b)(1)(A).[1]  Although the government violated Rule 16, I decline to impose

sanctions at this time, for the reasons that follow.[2]

_____

        [1]Albert Steven Bates joins in this motion, originally filed by his co-defendant, Walter
John Bates.

        [2]At a hearing on October 21, 2004, defense counsel conceded that the portion of this
motion dealing with *Brady* disclosure is moot, since the exculpatory evidence has been
produced before trial.  This Opinion and Order therefore deals only with the Rule 16 issues.

# I.  BACKGROUND FACTS[3]

On January 13, 2004, pursuant to this Court's Standing Order for Discovery and Inspection in Criminal Cases (Administrative Order 99-AO-003) and Fed. R. Crim. P. 16, Defendant Walter John Bates filed a discovery notice, including a request for production of written reports of all scientific testing.  On February 25, 2004, AUSA Saima M. Mohsin informed Defendants that glue stains discovered on the interior of one of Defendants' automobiles had been submitted for laboratory analysis by the Forensic Science Division of the Michigan State Police (MSP).  The referenced laboratory report (Bates no. 644), which listed Albert Steven Bates and Kevin Foster-Bey as the relevant suspects, stated that "[t]he evidence submitted was processed for latent prints with no identifiable [finger]prints being developed."  Gov. Exhibit 4; Defendant's Exhibit K.[4]  After issuing subpoenas to the MSP laboratory on April 7 and April 13, 2004, for both digital photos and fingerprint reports, Defendants received Bates no. 644 on April 15, 2004.[5]

---

[3]Following the evidentiary hearing, at the request of this Court, the government  re-designated all previously submitted exhibits [Docket # 168].   Unless otherwise stated, all exhibits referred to in this report follow the order assigned in that pleading.

[4]Co-Defendant Kevin Foster-Bey reported to the government that just prior to committing the bank robberies for which they were charged, Defendants had placed glue on their fingertips to avoid print detection.

[5]According to the government's *Motion to Quash Subpoena* [Docket #106], filed April 15, 2004 in response to the first subpoena, MSP microchemist Guy Nutter turned over a disc containing digital photos taken during the course of the examination. *Id*. Exhibit 2 at 1. However, AUSA Deegan indicated to defense counsel that the second subpoena of the laboratory was "improper," because the "lab had not completed its analysis," but assured Defense counsel that "[t]he government had obtained the requested materials from the Michigan State Police Forensic Laboratory and said materials will be provided to you under

A subsequent laboratory report received by Defendant on May 7, 2004 (Bates no. 794), also listing Defendants Albert Steven Bates and Kevin Foster-Bey as the subject of the tests, found that "[t]he visible print on the evidence submitted was photographed.  The print was entered and registered in the Michigan and International Automated Fingerprint Identification System (AFIS/IAFIS) and with negative results."  Defendant's Exhibit I.

Counsel for Walter John Bates obtained a paper copy of a digital photograph of the same glue stain, forwarding it to forensics expert Michael Sinke. On June 17, 2004, contrary to the original conclusions of the State's laboratory,  Sinke opined that the fingerprint present in the sample was sufficient for purposes of an identification comparison.

On July 8, 2004 AUSA Deegan,Carole M. Stanyar (counsel for Walter John Bates), Joan E. Morgan (counsel for Albert Steven Bates), MSP Detective Sergeant Charles Morden, MSP chemist Guy Nutter, FBI agent Terry Booth, and defense expert Michael Sinke held a meeting at the MSP's Northville, Michigan laboratory.  At some point in the meeting, either at the request of Ms. Stanyar or Mr. Deegan, Mr. Nutter excused himself to search for all laboratory results pertaining to Defendants.  Mr. Nutter returned with two fingerprint reports which had not been previously given to Defendants, along with the two above-mentioned documents (Bates nos. 644 and 794).

---

Fed. R. Crim. P. 16(a)(1)(F)" *Id.* Exhibit 2 at 2.  In addition, Deegan reiterated an earlier agreement to provide materials "once said materials were provided to the government." *Id*. As discussed *infra*, although AUSA Deegan may not have been aware of additional test results at that time, AUSA Mohsin had already been informed by agent Mangan that additional tests recently performed showed exculpatory results.

One of the newly-discovered reports, inscribed with a completion date of April 7, 2004, indicated that subsequent to receiving the results of Bates numbered 644 and 794, the laboratory had performed additional tests pertaining to Defendants Albert Steven Bates and Kevin Foster-Bey which found that "[t]he latent prints on file were compared with the impressions of the above listed persons with no identifications being made." Government Exhibit 2.

The other document, which showed a completion date of April 19, 2004, listed Walter John Bates as test's focus.  The report found that "[t]he latent prints on file were compared with the impressions of the above listed persons with no identifications being made." Government Exhibit 1.

## II.  LEGAL PRINCIPLES

Fed.R.Crim.P. 16(a)(1)(F) provides:

"Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows-or through due diligence could know that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial."

Rule 16(d)(2) states that in the event of violations, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."

In determining whether Rule 16 sanctions are appropriate the court should consider "(1)

-4-

the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance." *U.S. v. Wicker,* 848 F.2d 1059, 1061 (10th Cir. 1988).  "It is well-settled in this circuit that the appropriate sanction, if any, for a failure to comply with Rule 16 is left to the sound discretion of the trial court." *U.S. v. Muhammad,* 948 F.2d 1449, 1454 (6th Cir. 1991).

Nonetheless, the court "must impose the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders" *U.S. v. Ivy,* 83 F.3d 1266, 1280 (10th Cir. 1996) (internal citations omitted).  The harmless error standard of Fed.R.Crim.P. 52(a) ("[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded") applies to Rule 16(a) violations. *U.S. v. Phillip,* 948 F.2d 241, 251 (6th Cir. 1991); *United States v. Lockhart,* 865 F.2d 1269 (6th Cir.1989).  "Generally, an error not rising to constitutional significance is harmless 'unless it is more probable than not that the error materially affected the verdict.'" *Id.* (internal citations omitted).

### III.  ANALYSIS

#### A.  Rule 16(a) Violations

The government disputes that its failure to procure the results of two fingerprint tests before July 8, 2004 amounts to a violation of Rule 16.  Citing 16(a)(1)(F)(i), the government argues that it did not come into actual possession of the two reports in question until July 8, 2004, at which time they were immediately given to defense counsel.

-5-

The government states that the disclosure of the AFIS report (Bates no. 794) on May 7, 2004 lends credence to its position that failure to disclose the subsequently discovered reports was an "innocent oversight." *Government's Post-Hearing Brief* at 12.   The government argues further that its attorneys convened a meeting on May 13, 2004, requesting that laboratory  personnel turn over all existing reports. *Id*.  Although the government concedes that the two reports in question were not produced at the May 13th meeting, it argues that at the follow-up meeting in July, AUSA Deegan directed laboratory personnel to search for results of additional testing. *Id.*

Contrary to the government's assertion, Rule 16 violations occurred.  Although Agent Michael Mangan testified at the evidentiary hearing that he did not learn of the results of the two, later-discovered tests (Gov. Exhibit 1, 2) until after the July 8, 2004 meeting, he acknowledged at a later point in the same hearing that he had first become aware of the results of one of the tests (Gov. Exhibit 1) in April, 2004. *Evidentiary Hearing* at 37, 39-42. He testified further that within a day of receiving the test results, he informed AUSA Mohsin.

The affidavits of both Magnan and Mohsin state that they did not view the two fingerprint analysis reports reflecting the April results until July 8, 2002.[6] *Motion to Strike Evidentiary Hearing*, Mangan Affidavit at ¶5, Mohsin Affidavit at ¶5. However, the distinction drawn  between *results* and *reports* is a tortured one at best.  MSP Detective Charles Morden testified that he completed his analysis of Government Exhibit 1 on April

---

[6]AUSA Moshin states that she was "unaware of the existence of either report" until "being notified of their existence" on July 8, 2004.

7 and Government Exhibit 2 on April 19, 2004, then handed the results to his secretary for typing. *Evidentiary Hearing* at 92. He indicated that after the results were typed, they were then submitted to administrative, then peer review. *Id.* at 94. Morden indicated that the finalized report would then be delivered to the requesting agency. *Id.* at 94-95. He added that if delivery of the report were delayed or misplaced, "[i]t would be *the responsibility of the agent* to say, okay. Where [sic] is the status of my case, and has the analysis been done?" (emphasis added) *Id.* at 95.[7]

The government cites several cases which state that no Rule 16 violation occurs where scientific analysis does not "generate any tangible results." *See United States v. Dossey,* (unpublished) 2003 WL 1870917, 3 (6th Cir. 2003). In this case, there *were* tangible and exculpatory results. In addition *Dossey* is distinguishable for several other reasons. First, the type of analysis performed in the present case is customarily placed in a discoverable form, i.e. a written report. Second, both the agent and the AUSA were aware that the creation of the ensuing reports its was imminent. Third, as indicated above, the agent bore the responsibility of procuring the reports if their delivery was not forthcoming.

These reports, the contents of which were known by at least one FBI agent and one government attorney, lay unaccessed for three additional months until a fingerprint expert hired by Defendants apparently voiced concern to another AUSA that the two reports already

---

[7]Moreover, agent Mangan acknowledged that he had contacted AUSA Mohsin "close in time" to receiving the results of the tests in April, 2004, because those particular test results were "important." *Evidentiary Hearing* at 42.

-7-

submitted  (Bates nos. 644 and 794) represented only a portion of the laboratory's results.  "[A] prosecutor may not sandbag a defendant by 'the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial'."  *U.S. v. Marshall* 132 F.3d 63, 68 -69 ( D.C. Cir. 1998).

The government-sponsored "repose" of exculpatory documents  is equally objectionable in this case.  I reject the government's facile contention that there was no Rule 16 violation because they presented these documents to Defendants' attorneys moments after they obtained "possession" of them on July 8, 2004.  Had the Defendants' fingerprint expert not prodded the government into searching for additional records on July 8, 2004 (after two previous requests by Defendants) it is doubtful that such documents would have ever surfaced.  Pursuant to Rule 16(a)(1)(F)(I),  these documents were within the government's "control" as of April, 2004 and should have been timely submitted to Defendants.  Further, I find that the failure to do so - at the very least - demonstrates a lack of due diligence sufficient to establish a Rule 16 violation.


### B.  Sanctions

Defendants, arguing that their case has been prejudiced by the discovery violation, request that this Court impose a number of sanctions on the government, including allowing the defense "greater latitude at trial in the cross-examination of Agent Mangan in light of his conduct," a jury instruction indicating that "the government engaged in intentional misconduct by failing to disclose the exculpatory fingerprint test results," and the

authorization of additional funds "following an updated demonstration of need by defense counsel. *Defendants' Post-Hearing Brief* at 24-25.

Rule 16(d)(2) provides remedies for non-compliance:

"If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances."

Even though Defendants have amply demonstrated that they expended additional time and monetary resources as a result of the government's Rule 16 violation, they fail to establish that their case has been *materially* prejudiced. "A defendant is prejudiced under Rule 16 only when he is unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury." *U.S. v. Stevens,* 380 F.3d 1021, 1026 (7th Cir. 2004); *United States v. De La Rosa,* 196 F.3d 712, 716 (7th Cir.1999). The court in *U.S. v. Phillip, supra*, 948 F.2d at 251, held that:

"even if Rule 16 was violated, no prejudice to the defense resulted. The Federal Rules of Criminal Procedure include a harmless error standard: 'despite the fact that error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.' Fed.R.Crim.P. 52(a). This standard applies to violations of Rule 16(a). Generally, an error not rising to constitutional significance is harmless "unless it is more probable than not that the error materially affected the verdict."

(internal citations omitted)

Likewise in the present case, Defendants have not demonstrated that the government's discovery violation prejudiced their substantial rights. Despite the fact that the government did not make a prompt submission of Rule 16 material, Defendants have received the

documents well in advance of trial.  Even though "in the absence of bad faith and prejudice . . .court[s] theoretically could impose such a sanction," fashioning a remedy becomes problematic since this Court cannot impose a practical remedy for a wrong that no longer exists.  *U.S. v. Ivory,* 131 Fed.Appx. 628, 631   2005 WL 1079881, 3 (10th Cir. 2005)(unpublished). The conventional remedies proposed by Rule 16(d)(2), such as permitting discovery of the undiscovered materials, are moot, given the ultimate disclosure of the reports.  Granting a continuance to Defendants would also be ineffectual, given the fact that they received the material over a year ago and are still awaiting trial.  Unlike the remedies available pursuant to Fed. R. Civ. P. 37, this Court cannot sanction the government by imposing a monetary penalty.  *See Adeleke v. U.S.,* 355 F.3d 144, 151 (2nd Cir. 2004)(The language of Rule 16(d) is insufficient to constitute "express waiver of sovereign immunity").  Further, it is not for this Court at this early date to delineate the scope of defense cross-examination of Agent Mangan or any government witness.  The precise scope of cross-examination, on a question-by-question basis, and in the context the facts as they are developed at trial, is best left to the trial judge, whose decision will be informed by the Federal Rules of Evidence, case law, and any salient constitutional principles.  For similar reasons, Defendants' request for a jury instruction that the government engaged in intentional misconduct is inappropriate at this time.[8]

---

[8]Apart from the fact that requests for jury instructions should be addressed to the trial judge at trial, Defendants' request would appear to improperly amount to the Court taking judicial notice of a disputed fact. *See United States v. Garland*, 991 F.2d 328, 332 (6th Cir. 1993).

I recognize that the defense has unarguably expended additional time and limited monetary resources as a result of the government's Rule 16 violations.  While principles of sovereign immunity preclude ordering the government to reimburse these expenses, *Adeleke, supra*, it is my view that this Opinion and Order may appropriately be factored into any request for additional funds under the Criminal Justice Act.

### IV.  CONCLUSION

For these reasons, Defendants' Motion for Rule 16 Sanctions [Docket #27] is DENIED.

SO ORDERED.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 13, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 13, 2005.

S/G. Wilson
Judicial Assistant

-11-